

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| FREDERICK L. THOMAS, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 2:07-CV-0600-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.  Introduction.

Frederick L. Thomas ("Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Mr. Thomas timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Thomas was forty-three years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school

education. (Tr. at 17.) His past work experiences include employment as a materials handler, bartender, and laborer for a temporary service agency. *Id.* Mr. Thomas claims that he became disabled on October 23, 2002, due to chronic lower back, neck, and bilateral upper and lower extremity pain, as well as major depression. (Doc. 7 at 2.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the

analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do

other work, then he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Thomas met the non-disability requirements for a period of disability and DIB and was insured through at least September 30, 2006. (Tr. at 22.) She further determined that Mr. Thomas has not engaged in substantial gainful activity since the alleged onset of his disability. *Id.* According to the ALJ, Plaintiff's chronic lower back pain and major depressive disorder are impairments which are considered "severe" based on the requirements set forth in the regulations. *Id.* However, she found that these impairments neither met nor medically equaled any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. *Id.* The ALJ did not find Plaintiff's allegations regarding his limitations to be totally credible, and she determined that Mr. Thomas has the residual functional capacity to perform light and sedentary work with the additional limitations of lifting no more than 10-20 pounds; having a sit/stand option; and limiting walking to no more than 3-4 blocks. *Id.*

According to the ALJ, Mr. Thomas is unable to perform any of his past relevant work, he is a "younger individual," and he has a "high school

education," as those terms are defined by the regulations.  *Id*.  The ALJ determined that Plaintiff has "a semiskilled and unskilled work background, and skills that are transferable to light work." *Id*.  Under Medical-Vocation Rule 202.22 (light past relevant work) and Rule 201.28 (sedentary past relevant work), a person of Plaintiff's age, education, and experience, who can perform light or sedentary work is considered "not disabled." However, because Plaintiff also asserts additional non-exertional limitations, the ALJ elicited testimony of a Vocational Expert ("VE") to determine if there are a significant number of jobs in the national economy that Plaintiff is capable of performing.  *Id*. at 21.  The VE testified that there are a number of jobs in the local economy that a person with Plaintiff's limitations would be capable of performing.  Those jobs include:  industrial gate tender (245 jobs available in north central Alabama), security monitor (215 jobs available in north central Alabama), and industrial wire worker (180 jobs available in north central Alabama).  *Id*.  According to the VE, the overall number of sedentary jobs available in north central Alabama totals between 2,100 and 2,300.  *Id*.  The ALJ concluded her findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time

through the date of this decision." *Id.* at 22.

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620 (1966)).  Indeed, even if

this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Mr. Thomas alleges that the ALJ's decision should be reversed and remanded for two reasons. First, Plaintiff claims that "the ALJ failed to properly weigh the opinion of Plaintiff's long-term treating sources." (Doc. 7 at 8.) Second, Plaintiff argues that the ALJ's findings regarding his mental impairment are not supported by substantial evidence. *Id.* at 11.

A.   Treating Physician's Opinion.

Plaintiff contends that the ALJ improperly rejected the opinion of his long-term treating physician in favor of a one-time consultive DSS examiner

who concluded that Plaintiff would be capable of work at a light level of exertion. (Doc. 7 at 8-9.)

The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Generally, opinions from treating sources are given more weight since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments. However, a disability opinion by a treating source must be well-supported by clinical and laboratory findings and consistent with the other evidence in order to be given controlling weight. *See* 20 C.F.R. § 404.1527(d)(2), § 416.927(d)(2).

The Eleventh Circuit has said that the opinion of a claimant's treating physician must be accorded "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan,* 125 F.3d 1436,

1440 (11th Cir. 1997)); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).  When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate his or her reasons.  *See Phillips*, 357 F.3d at 1240-1240.

"Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 124 (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."   20 C.F.R. §§

404.1527(e), 416.927(d).  The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440.  Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity.  *See, e.g.,* 20 C.F.R. § 404.1546(c).

Plaintiff argues the ALJ did not weigh properly the opinion of his treating physician Dr. Max Michael.  *See generally* Doc. 7.  Dr. Michael saw Plaintiff at Cooper Green Hospital in February, March, and June 2003; February, June, and July 2004; and January 2005.  (Tr. at 189, 190, 242, 243, 249-54, 282.)  On June 24, 2003, Dr. Michael wrote a *Medical Source Statement* indicating that he was treating Plaintiff for back pain caused by osteoarthritis and intervertebral disc disease and, in his opinion, Plaintiff was unable to maintain gainful employment due to his condition.  *Id.* at 226.  Dr. Michael also opined that he did not anticipate that Plaintiff's condition would improve and that Plaintiff was not a surgical candidate.  *Id.*

In reaching her conclusions, the ALJ considered Dr. Michael's opinion,

however, she determined that the *Medical Source Statement* was only entitled to be given limited weight. The ALJ noted that Dr. Michael's *Medical Source Statement* did not provide objective medical evidence to support his opinion. *Id.* at 19. In fact, the ALJ explained that prior to Dr. Michael's *Medical Source Statement*, his previous treatment records for Mr. Thomas did not indicate that he ever diagnosed Plaintiff with either osteoarthritis or intervertebral disc disease. *Id.* In Dr. Michael's most recent examination of Plaintiff on July 21, 2004, Dr. Michael diagnosed him with stasis edema, high cholesterol, and chronic low back pain. *Id.* at 20. He also continued Plaintiff on his current medication and recommended he return for another appointment in six months. *Id.* Additionally, x-rays of Plaintiff's lumbosacral spine taken in January 2003, were normal. *Id.* at 19, 196. Finally, the ALJ noted that while Plaintiff consistently reported having back pain to Dr. Michael, there were no functional limitations documented in the treatment notes as being associated with his condition prior to the *Medical Source Statement*. *Id.*

In addition, Dr. Michael's opinion was contradicted by a report from Dr. Anjaneyulu Alapati. *Id.* at 227-31. Dr. Alapati examined Plaintiff in July

2003. At that time, Plaintiff told Dr. Alapati he had back and neck pain, but was able to sit for 30 minutes, stand for 30 minutes, walk for 20 minutes, and walk for 3-4 blocks. *Id.* at 228. Plaintiff also reported he could drive and go grocery shopping, but did not do any household work. *Id.* On examination, Dr. Alapati found Plaintiff's cervical and lumbar spine movements were limited, but there was no definite evidence of cervical or lumbar radiculopathy. *Id.* at 231. Dr. Alapati concluded that Plaintiff could be expected to stand and walk six hours in an eight hour day, sit six hours in an eight hour day with frequent breaks, and lift/carry up to 20 pounds. *Id.* Furthermore, Dr. Alapati noted that Plaintiff could bend, stoop, and crouch occasionally and had no manipulative limitations on reaching, handling, feeling, grasping, and fingering. *Id.* Dr. Alapati's findings not only support the ALJ's RFC, but they also support the limited weight that the ALJ placed on Dr. Michael's opinion.

For these reasons, the Court is of the opinion that the ALJ had good cause to limit the weight given to Dr. Michael's opinion given in the *Medical Source Statement* from June 2003.

    B.    Mental Impairment.

Plaintiff also disputes the ALJ's findings related to his mental impairment. (Doc. 7 at 11.) The ALJ determined Plaintiff's major depressive disorder was a severe impairment, however, she found no evidence that this impairment prevented Plaintiff from performing work activity. (Tr. 20, 22.) The ALJ recognized that Plaintiff sought treatment for depression in February 2003, and was diagnosed as having a major depressive disorder, an anxiety disorder, alcohol dependence in remission, and cocaine dependence in remission. *Id.* at 18, 200-06. Plaintiff was prescribed medication and returned to UAB in March 2003, and May 2003, for medication checks. *Id.* at 198-99. In March 2004, Plaintiff was hospitalized after a reported suicide attempt in which he ingested eight Motrin.[1] *Id.* at 256-71.

However, during this hospitalization, Plaintiff's medications were adjusted and his mood improved significantly. *Id.* at 258. The ALJ highlighted that the treatment notes following Plaintiff's hospitalization showed that with proper medication, Plaintiff's depression was only mild to

---

[1] Plaintiff also reported an additional suicide attempt the week prior in which he reportedly tried to kill himself by pinching his nostrils and holding his breath.

moderate. *Id.* at 20, 284-87. The Commissioner also noted that by October 2004, Plaintiff reported no complaints and claimed that he had only occasional nervousness and depression. *Id.* at 284. Based on the foregoing evidence, the ALJ determined Plaintiff's mental impairment was not disabling and that finding is supported by substantial evidence.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 4th day of March 2008.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671